IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

TROY L. ASH,
Defendant.

Case No. 20–CR–40061–JPG

## MEMORANDUM & ORDER

Before the Court are Defendant Troy L. Ash's pro se Motion for Change of Venue, (ECF No. 97); Motion to Suppress Custodial Statements, (ECF No. 98); Motion Challenging Jurisdiction, (ECF No. 107); Motion to Dismiss for Speedy Trial Rights Violation, (ECF No. 108); and Motion for Discovery, (ECF No. 109). The Government responded. (ECF Nos. 105, 106, 111, and 116). For the reasons below, the Court **DENIES** Ash's Motion for Change of Venue, Motion to Suppress Custodial Statements, Motion Challenging Jurisdiction, and Motion to Dismiss for Speedy Trial Rights Violation; and **DEFERS RULING** on his Motion for Discovery.

### I.  MOTION FOR CHANGE OF VENUE

First, Ash asserts that venue for this criminal prosecution is improper in this District because, as an African American in a predominately white area, "it would be nearly impossible to summon a jury of [his] peers," thus depriving him of "the fair trial he deserves." (Ash's Mot. for Change of Venue at 1). The Court disagrees.

The law on this issue is clear: "[T]he Constitution does not entitle a defendant to a venire of any particular racial makeup." *United States v. Adkinson*, 916 F.3d 605, 609 (7th Cir. 2019) (citing *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("Defendants are not entitled to a jury of any particular composition . . . .")). If Ash is worried about implicit bias, then "voir dire [is] the

appropriate vehicle to address it." *Id*. The Court therefore **DENIES** Ash's Motion for Change of Venue.

## II. MOTION TO SUPPRESS CUSTODIAL STATEMENTS

Ash claims to seek suppression of "the statements which [were] made in a custodial setting under circumstances that the agents should know or should have known were reasonabl[y] likely to elicit incriminating responses." (Ash's Mot. to Suppress Custodial Statements at 1). But he does not provide any factual background—only citations to legal authority. (*See id.* at 2–3). Because there is no mention of the statements that he seeks to suppress, his brief does not "contain a short, concise statement of [his] position, together with citations . . . to the record." *See* SDIL-LR 7.1(d). The Court therefore **DENIES** Ash's Motion to Suppress Custodial Statements.

## III. MOTION CHALLENGING JURISDICTION

Next, Ash says that he is entitled to a *writ of quo warranto* as "a real live inhabitant, living indigenous of the land . . . ." (Ash's Mot. Challenging Jurisdiction at 1).

> The defendant challenges the Presiding Judge for the record pertaining to the person, party, and/or individual "status" "nationality" and the Judge Oath of Office, which must be presented for the record "Delegation of Authority Order" from the Supreme Court, and his/her Surety Bond and License therefore failure to state his/her nationality status the person acting as judge violates the United States Constitution for America, which clearly forbids a citizen of the United States to have any type of Title of Nobility.
>
>       \*          \*          \*
>
> Wherefore, I Troy Ash invoke this challenge of jurisdiction and authority and Petition for Quo Warranto to all parties known and unknown to this matter to present their status and nationality for the record . . . to establish jurisdiction, failure to establish jurisdiction the court must move to dismiss the case in chief for want of jurisdiction with prejudice.

(*Id.* at 2, 6–7). The Court disagrees.

Ash's second motion is nonsensical and meritless. "The purpose of a quo warranto action generally 'is to question whether a person lawfully holds title to office.'" *Parker v. Lyons*, 757 F.3d 701, 704 (7th Cir. 2014) (quoting *McCready v. Ill. Sec'y of State*, 888 N.E.2d 702, 712 (Ill. App. Ct. 2008)). In other words, "[t]he writ of quo warranto, which has been characterized as an 'extremely difficult and uncertain' remedy, may be used to oust a wrongful holder from office." John Bourdeau et al., 8 Federal Practice § 20:684 (Lawyers ed. 2021) (quoting *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 981 (6th Cir. 1993). And "[f]or private individuals, quo warranto is not a writ of right. . . . [I]ndividuals may bring an action in quo warranto only by leave of court." *People v. Phelan*, 634 N.E.2d 739, 741(Ill. 1994). At bottom, Ash's motion was filed without leave and simply amounts to a baseless accusation that the Presiding Judge is unlawfully seated. Without more, the Court **DENIES** his Motion Challenging Jurisdiction.

### IV.  MOTION TO DISMISS FOR SPEEDY TRIAL RIGHTS VIOLATION

Ash also contends that his constitutional right to a speedy trial has been violated. (Ash's Mot. to Dismiss at 1). The Court disagrees.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend VI. And Congress has clarified that a speedy trial is one that "commence[s] within **seventy days** from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." *See* 18 U.S.C. § 3161(c)(1) (emphasis added). Even so, some "periods of delay [are] excluded in computing the time within which . . . the trial of any such offense must commence . . . ." *Id.* § 3161(h). This includes any "delay resulting from any pretrial motion, from the filing of the motion through" its disposition, *id.* § 3161(h)(1)(D); as well as any "delay resulting from a

continuance granted by any judge on his own motion or at the request of" a party, "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A).

With that in mind, Ash still has 36 days left on the speedy-trial clock, which is not running. Ash was indicted on July 8, 2020; but he did not make an initial appearance until July 16—thus, July 16 is when the 70-day clock started ticking. That said, the Government filed a Motion to Detain on July 13 that was not ruled on until July 23; so the clock really began running on July 24. Thirty-four days passed. Then, on August 26, the Court continued the trial date until November 2, finding that the ends of justice served by a continuance outweighed the best interest of Ash and the public in a speedy trial. The same occurred on October 19 (continuing trial until December 21), December 4 (continuing trial until February 22, 2021), January 28 (continuing trial until March 22), February 4 (continuing trial until May 10), and April 22 (continuing trial until June 21).[1] In sum, only 34 days have run. The Court therefore **DENIES** Ash's Motion to Dismiss for Speedy Trial Rights Violation.

## V.   MOTION FOR DISCOVERY

Finally, Ash contends that his standby counsel refuses to visit him in jail to go over the discovery out of "his personal fears" of the COVID-19 virus. (Ash's Mot. for Discovery at 1). Though Ash has met with his standby counsel "via video so [he] can listen and inspect" the discovery, "it malfunctions preventing [him] to see it." *Id.* In short, Ash argues that he has not seen

---

[1] Ash also argues that "[t]he Covid pandemic hasn't prevented the courts (government) from arraigning people daily, or from allowing them to plea out . . . . So please don't attribute this obvious delay on the Covid 19 pandemic." (Ash's Mot. to Dismiss at 2). But the amount of coordination and personnel required to conduct a jury trial during a public-health emergency is no doubt a valid reason to continue a trial date. Arraignments and change-of-plea hearings, on the other hand, are less onerous and can occur remotely with a defendant's consent.

the discovery "because (1) standby counsel refusal to visit jails, (2) malfunctioning or inabilities to operate the machines, (2) the government refuses to allow me to have it in my possession. Which is ironic when the jail allows [inmates] to have [their discovery materials], other inmates have theirs in their possession." (*Id.* at 2). He therefore asks the Court "to dismiss the indictment on the grounds of [him] being denied [the] discovery . . . ." (*Id.* at 3).

In response, the government contends that it provided a "Jail Copy" of the discovery to Ash's standby counsel, who was supposed to give it to Ash. (Gov't's Fourth Resp. at 5). But "[w]hile the jail computers are set-up to allow inmates to review PDF documents, it is unclear whether the computers are capable of playing recordings." (*Id.* at 5–6). Moreover, although "[t]he government did not put any recordings on the 'Jail Copy,' [it] did provide stand-by counsel with additional discs which contain recordings or other non-PDF material." (*Id.* at 6).

The Court has broad authority to regulate discovery and can order a party to permit its inspection or by prescribing other just terms and conditions. Fed. R. Crim. P. 16(d). But to adequately address Ash's concerns, the Court must hear from the parties and Ash's standby counsel to uncover why Ash has yet to review the discovery. If the Court needs to transport him to the courthouse so he can review the non-PDF discovery in camera, then it will do so. The Court therefore **DEFERS RULING** on Ash's Motion for Discovery until a hearing is conducted. A date and time will be provided in a separate notice.


## VI.  CONCLUSION

The Court **DENIES** Defendant Troy L. Ash's pro se Motion for Change of Venue, Motion to Suppress Custodial Statements, Motion Challenging Jurisdiction, and Motion to Dismiss for Speedy Trial Rights Violation; and **DEFERS RULING** on his Motion for Discovery.

**IT IS SO ORDERED.**

**Dated: Monday, May 24, 2021**

<u>S/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**